## STEPHEN L. MERCHANT *vs.* WESTERN LAND ASS'N.

Argued by appellant, submitted on brief by respondent, Jan. 15, 1894. Affirmed Jan. 30, 1894.

No. 8476.

**Dividends to stockholders of surplus in property.**

> An act authorizing any stockholders of a private corporation to require that the real property of the corporation not necessary for the transaction of its business and the payment of its debts be appraised and partitioned, so that its stockholders who require it shall have conveyed to them in severalty so much of such property as, according to the appraised value, shall bear to the whole property so appraised the same proportion as the stock held by each bears to the whole stock issued, and providing that such conveyance shall be in full of their interest in the property so appraised, merely authorizes stockholders to require a dividend of profits in property instead of in money, and it impairs no rights of the corporation or of its stockholders or creditors. and is not unconstitutional.

Appeal by defendant, the Western Land Association, a corporation, from an order of the District Court of St. Louis County, *J. D. Ensign*, J., made September 9, 1893, overruling its demurrer to the complaint.

The plaintiff, Stephen L. Merchant, as administrator with the will annexed of the estate of Frederick H. Wolcott, deceased, and as trustee under the will, brought this action pursuant to the provisions of Sp. Laws 1871, ch. 140. He sought to obtain a disclosure of the dealings and affairs of the corporation and to have set off to him surplus property and real estate at its appraised value, according to the terms of that Act. The complaint stated that as such administrator and trustee plaintiff held four shares and seven half shares of the capital stock of the corporation, that the corporation owned a large amount of real estate in Duluth and elsewhere of great value not required to pay its debts or carry on its business, that many of the original shares of the capital stock have been bought in, paid off and cancelled, that the owners of a majority of the remaining shares of the stock were conducting its affairs secretly and that the officers refused to give plaintiff any information as to its property or affairs.

The defendant demurred to the complaint on the ground that

it did not state facts sufficient to constitute a cause of action.  The demurrer was overruled with leave to answer in twenty days.  It appeals.

*Walter Ayers,* for appellant.

The demurrer is intended to reach the question of the constitutionality of Sp. Laws 1871, ch. 140.  The Western Land Association was incorporated by Sp. Laws 1857, Ex. Sess. ch. 31.  Its charter was amended by Sp. Laws 1868, ch. 116.  It is a strictly private corporation.  The Act of 1871 assumes to control the disposition of the property of this private corporation; and the question is, in so doing does it impair the obligation of any contract contained in the charter or does it take private property for purposes purely private.  Defendant claims that the Act in question impairs the obligation of a contract; *First,* between the state and the corporation; *Second,* between the corporation and its stockholders; *Third,* between the corporation and its creditors; *Fourth,* it appropriates or gives to individuals the right to appropriate the property of the corporation for uses purely private.  1 Beach, Corp., § 23; *Clearwater* v. *Meredith,* 1 Wall. 25; *Hospes* v. *Northwestern Mfg. & Car Co.,* 48 Minn. 174.

*W. E. Wright,* for respondent.

GILFILLAN, C. J.   This defendant was incorporated by a law passed at the Extra Session of 1857, ch. 31, to have perpetual succession, and made "capable in law to have, possess, sell, convey, and enjoy real and personal estate."  Other provisions of the act seem to contemplate the buying and selling of real estate as a business of the corporation, though it was also authorized to construct on its lands, mills for the manufacture of a great variety of articles.  Its capital stock was fixed by the act at $100,000, to be divided into shares of $50 each, and it was authorized to increase the capital stock to $500,000 whenever it should deem the same necessary.  An act in 1868 continued and made some unimportant changes in the act of 1857.

Sp. Laws 1871, ch. 140, authorized any stockholder to "compel partition and conveyance to him in severalty of his interest in any

of the real estate of said company which has been surveyed and platted as a town, or as a part of an addition to any town, or any other real estate susceptible of division, and which is not necessary for the conduct of the business of said company, nor required for the payment of its debts," and to "require a division or dividend of any money or personal assets of said company not required for the conduct of its business or the payment of its debts," and authorized him for that purpose to bring an action in behalf of himself and all other stockholders who may choose to come in and ask for like partition; provided what the complaint shall contain, including a description of the real property; that any stockholder may answer, and what his answer shall contain, and what the answer of the corporation shall set forth, including the whole number of shares issued, to whom and when issued, and a statement of moneys and personal assets on hand, and of all moneys received from sales of property, and of all payments made on account of all property purchased for said company, and of all expenses and disbursements made on account of said company, and of all debts and obligations of said company, and of all property sold or contracted to be sold, to whom, when, and terms of sale. It empowered the court to determine in what property described in the complaint a division can be had as in this act provided for; that such property shall be appraised, and the court shall allot and set apart and cause to be conveyed to each stockholder asking partition an amount of said property which at its appraised value shall bear the same proportion to the appraised value of the whole as the stock held by him sustains to the whole stock legally issued; and provided that the conveyance to him of the real estate so allotted shall be in full of all further right on his part in the remainder of the property out of which the allotment shall be made. And the court was also empowered to make such further orders, judgments, and decrees as to the payment of the debts of the company, and as to a division or dividend of the moneys and personal assets of the company, and any other matter pertaining to the affairs, business, property, or transactions of said company, or any of the officers or agents, as may be equitable and just and proper for the protection and best interests of the stockholders.

We have made this full statement of the provisions of the act of 1871 because it is claimed that the effect of those provisions on the

rights of the corporation and its stockholders and creditors is such as to render the act unconstitutional.

This action is brought under the act of 1871.

The complaint sets forth facts bringing the case within the act, including the facts that the whole number of shares issued was 4,000, a large number of which have been canceled by conveying to the holders real estate; that the corporation has a large amount of real estate of enormous value, the greater part of which is unnecessary for the conduct of its business or for the payment of its debts; that immense profits have accrued from purchases and sales, and the stock has come to be worth upwards of $2,500 per share; and that the officers have withheld from the stockholders information as to the true condition of the corporation's affairs, and refused to make the full dividends which have been earned and received by it.

It is claimed the act of 1871 is unconstitutional, because it impairs—

*First,* the obligation of the contract between the state and the corporation;

*Second,* the obligation of the contract between the corporation and its stockholders;

*Third,* the obligation of the contract between the corporation and its creditors;

*Fourth,* it appropriates the private property of the corporation to uses purely private.

If the act were intended to disable the corporation in any way to do the business or to hold the property contemplated by the act of incorporation, or to give any stockholder rights against the corporation in excess of those contemplated by that act, or to devote any of its property to purposes not within the intent of that act, or to take away the remedies of its creditors, it would be open to the objections made to it.

But the act of 1871 does not intend that any property of the corporation shall be divided among its stockholders except such as is in excess of what is necessary to the conduct of its business and the payment of its debts.    Some criticism of the act is made because of the assumed impossibility to determine how much property may be required for payment of debts and how much necessary for the

conduct of the business.    But we see no more difficulty in determining those things than a court of justice often meets.    As to the amount of property necessary for the conduct of the business the act of incorporation furnishes some data by fixing the amount of capital stock, which was intended to be the working capital.    While the court might or might not, according to the condition and circumstances of the business, limit the value of the property to be retained for the conduct of the business to the amount of capital stock, yet, as the act does not contemplate that the authorized working capital shall be divided among the stockholders, the court would probably not be justified in leaving with the corporation property less in value than the face value of the stock.

What was the purpose of the act of incorporation?    It was to join those who might take stock in a legal and artificial entity to transact the business, say, of buying and selling real estate, in the interest and for the benefit of the stockholders.    They were to be entitled to the profits of the business, and to have such profits seasonably divided among them in proportion to the amount of stock held by them respectively.    There is nothing in the act suggesting a right in the corporation, against the protest of any stockholder, to go on year after year, adding profits to capital, and accumulating property indefinitely as to time or amount.    A law for enforcing dividends out of profits invades no right vested in the corporation, and enforces the rights of the stockholders.    Such, in effect, is the act of 1871.    It contemplates a distribution of only the property which may be assumed to represent, not capital stock or working capital, but profits earned, among the stockholders, if they choose to receive their dividends in that form.    As to those who choose to take their dividends in property, instead of allowing the corporation to turn it into cash, and pay them in that form, no rights are invaded. Those who prefer that the corporation turn their share of the property representing profits into cash, and pay them in that way, may, under the act, have it so, and they cannot complain.    It is to be assumed that the court can and will adjust the rights of the stockholders in the property subject to division as accurately as though it were cash.    No rights of the stockholders are impaired, and no stockholder can complain; and we fail to see how the corporation, which is only an ideal thing or entity, representing the stockhold-

ers, can complain that dividends are to be made in property instead of in cash. Suppose all the stockholders should avail themselves of this act, what right of the corporation would be thereby impaired? Nor do we see how an act requiring dividends to be made in property representing profits impairs the rights of creditors any more than would an act for enforcing dividends from profits in the shape of money on hand, or than would the act of the corporate officers in making such dividends.

Order affirmed.

(Opinion published 57 N. W. Rep. 931.)